******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MONDAY J. ORTIZ
(AC 39391)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

Convicted, on conditional a plea of nolo contendere, of the crimes of posses-
sion of a sawed-off shotgun and possession of a weapon in a motor
vehicle, the defendant appealed to this court, claiming that the trial
court improperly denied his motion to suppress certain evidence seized
during a warrantless search of his van. The police had been dispatched
to an apartment complex to investigate a report of an assault and had
been told that the suspect was in his apartment with a shotgun. After
they arrived, officers were approached by an unidentified man, who
told them that the person they were looking for was sitting with a
shotgun in a gray van in the parking lot. Upon locating the van, the
officers did not see the defendant or the shotgun in the van and learned
that the plate did not belong to the van and that there was no information
on record for the vehicle identification number. Certain of the officers
returned inside the building, where they encountered the defendant and
placed him under arrest. Officers again looked into the tinted windows
of the van and saw the barrel of a shotgun, as well a box with bullets
spilling out of it. Upon seeing the shotgun, the police used a key fob
seized from the defendant to unlock the van and seized the gun. *Held*
that the trial court properly denied the defendant's motion to suppress
the evidence seized from the van, that court having properly determined
that the warrantless search of the van and seizure of the shotgun were
justified under the plain view doctrine: the warrantless seizure of contra-
band that is in plain view is reasonable under the constitution if the
initial intrusion that enabled the police to view the item seized was
lawful and the police had probable cause to believe that the item was
contraband, and here, because the officers' second look into the defen-
dant's vehicle was merely a continuation of their ongoing investigation
into witness reports of a suspect who had committed an assault, was
armed with a shotgun, and had been seen sitting with a shotgun in a
van in the parking lot, the officers were lawfully in the private parking
lot, and although the defendant claimed that once he was placed in
handcuffs in the police cruiser, the police were no longer permitted to
search his van, the defendant did not dispute that the officers were
lawfully present in the residential parking lot near his apartment when
they first looked into his van because they were responding to an emer-
gency call reporting an assault on the premises, the officers had not yet
located the shotgun described by the witnesses, and it was reasonable
for them to believe that the shotgun was located in the defendant's van
and to return to the parking lot in order to retrieve the weapon; moreover,
the incriminating character of the object viewed was immediately appar-
ent, as the trial court credited the officers' testimony that they could
see the barrel of a shotgun and bullets protruding from a box on the
floor of the van, and the totality of the facts were sufficient to warrant
a person of reasonable caution to believe that the weapon described
by witnesses might be found in the van and for the officers to infer that
there was a fair probability the defendant had stored the shotgun in his
van prior to his apprehension.

Argued February 22—officially released June 12, 2018

*Procedural History*

Information charging the defendant with the crimes
of assault in the third degree, possession of a sawed-
off shotgun, and possession of the weapon in a motor
vehicle, brought to the Superior Court in the judicial
district of Fairfield, geographical area number two,
where the court, *Holden, J.*, denied the defendant's
motion to suppress certain evidence; thereafter, the

defendant was presented to the court, *E. Richards, J.*, on a conditional plea of nolo contendere to possession of a sawed-off shotgun and possession of the weapon in a motor vehicle; judgment of guilty in accordance with the plea; subsequently, the state entered a nolle prosequi as to assault in the third degree, and the defendant appealed to this court. *Affirmed.*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Richard L. Palombo, Jr.*, senior assistant state's attorney, for the appellant (state).

*Opinion*

PELLEGRINO, J. The defendant, Monday J. Ortiz, appeals from the judgment of conviction rendered by the trial court following a plea of nolo contendere to the charges of possession of a sawed-off shotgun in violation of General Statutes § 53a-211 and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (a). On appeal, the defendant claims that the trial court improperly denied his motion to suppress evidence seized during a warrantless search of his vehicle. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. At approximately 2 p.m. on November 22, 2013, Bridgeport Police Officer Kenneth Ruge was dispatched to the YMCA building on State Street in Bridgeport to investigate a report of an assault. The alleged assault took place at the Harrison Apartments, which are located in the same building as the YMCA. The dispatcher relayed to Ruge that the suspect was in his apartment with a shotgun. Ruge arrived at the building approximately four minutes later and was met shortly thereafter by Sergeant Joseph Szor and Officer Tyrone Teele. The three officers parked their patrol cars in front of the building on State Street and walked into the lobby area of the YMCA through the main entrance. While they were speaking with the receptionist, Samuel Sanchez approached the officers and identified himself as the victim of the assault.

Sanchez, who worked at the YMCA in the maintenance department, told the officers that the defendant, a resident of the apartment building, came up from behind him and punched him in the back of the head. The officers observed injuries to the back of Sanchez's head and called for medical assistance for him. Sanchez described the defendant as a "shorter, medium build, bald Hispanic male" and reported that he lived in apartment 417 and owned a shotgun.

As they were speaking to Sanchez, an unidentified man approached the officers and told them that the person they were looking for was sitting with a shotgun in a gray van in the parking lot. Ruge transmitted this information over his radio while the unidentified man showed them to a side door leading to the residential parking lot; the man waited for them at the door. Around the same time, Officers David Neary and Garrett Waddel arrived and, having heard Ruge's update over the radio, proceeded to the parking lot to meet the other three officers. The parking lot was fenced in, located on private property and required a key card to access it. Posted signs indicated that the lot was for permitted residents of the Harrison Apartments only. When the officers arrived, there was only one gray van parked in the residential lot.

The five officers went to the van and looked into it to see if anyone was inside. Although the windows of the van were tinted, the officers' ability to see inside the vehicle was not impeded. None of the officers saw the defendant or a shotgun in the van. The officers ran a license plate check on the van and learned that the plate did not belong to the van and that there was no information on record for the vehicle identification number.

Ruge, Szor and Teele returned to the apartment building to continue their investigation, while Neary and Waddel stayed behind in the parking lot by the van. The unidentified man held the door open so that the three officers could reenter the building from the parking lot. The officers took the elevator to the fourth floor and approached apartment number 417. They knocked on the door for several minutes and received no answer. The officers then returned to the elevator and, as the elevator doors opened, a Hispanic male matching the description given by Sanchez exited the elevator and walked directly to the door of apartment 417.

The officers stopped the man before he could open the door and asked his name; he identified himself as the defendant. He was then placed under arrest, handcuffed, and searched incident to the arrest. The officers seized a key fob, a 12 gauge shotgun shell, a screwdriver and a box cutter from the defendant's person. When asked if they could search his apartment, the defendant refused and told the officers to get a warrant.

The officers took the defendant in the elevator back to the first floor and outside to be placed in the back of Ruge's patrol car. Ruge and Teele remained with the defendant. Meanwhile, Szor took the key fob and returned to the parking lot. Along with Neary and Waddel, Szor approached the van again to look for a shotgun. Neary cupped his hands and peered through the tinted windows again and saw the barrel of a shotgun as well as a box with bullets spilling out of it. He stated aloud that he thought he saw the barrel of a gun. Waddel then looked and saw the gun also. Szor approached, pressed his face to the window, and saw the barrel of the weapon sticking out of a box on the backseat floor of the van. All three officers recalled cupping their hands to shield the sun while looking into the tinted windows of the van. Upon seeing the shotgun, Szor used the defendant's key fob to unlock the van and seized the shotgun.

The defendant subsequently was charged by information with one count of possession of a sawed-off shotgun, one count of possession of a weapon in a motor vehicle, and one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). On March 2, 2016, the defendant filed a motion to suppress evidence obtained by the police as a result of the search of his vehicle.[1] On March 9, 2016, the trial court, *Holden*,

*J.*, conducted a motion to suppress hearing and heard arguments from both parties. On March 10, 2016, Judge Holden denied the motion to suppress in an oral decision, finding that there was "probable cause [for the officers] to believe that the car contained contraband or evidence pertaining to a crime." On the same date, following the court's denial of the motion to suppress, the defendant entered conditional pleas of nolo contendere on the gun-related charges, reserving his right to appeal the denial of his motion to suppress.[2] The court, *E. Richards, J.*, also made a finding that the motion to suppress would have been dispositive of the gun-related charges. On May 12, 2016, Judge Richards sentenced the defendant to a total effective term of five years incarceration, execution suspended after fifteen months, followed by three years of probation. This appeal followed.[3]

The sole issue in this appeal is whether the seizure of the sawed-off shotgun from the defendant's vehicle was the product of an illegal, warrantless search in violation of the defendant's rights under the state and federal constitutions to be free from an unreasonable search and seizure. Specifically, the defendant argues that the warrantless search of his vehicle and the seizure of the sawed-off shotgun found within the vehicle was not justified under any of the following exceptions to the warrant requirement: (1) the search was incident to a lawful arrest of a recent occupant of a motor vehicle; (2) there was probable cause to believe that the vehicle contained contraband; and (3) the contraband was in plain view to the officers. In response, the state claims that the court correctly determined that the seizure of the shotgun was justified under the plain view doctrine. Because we agree with the state that the officers' plain view of the shotgun justified their seizure of it, we need not address the defendant's alternative arguments.[4]

We begin our analysis by setting forth the appropriate standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Winfrey*, 302 Conn. 195, 200–201, 24 A.3d 1218 (2011).

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because a trial court's determination of the validity of a . . . search [or seizure] impli-

cates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 514, 903 A.2d 169 (2006).

We next set forth the applicable constitutional principles. "The fourth amendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures . . . . U.S. Const., amend. IV; see also Conn. Const., art. I, § 7. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. . . . Under both the federal and state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 111 Conn. App. 614, 622, 960 A.2d 1056 (2008), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009).

"In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the United States Supreme Court articulated what has become known as the plain view exception to the warrant requirement. The warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two requirements are met: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these items were contraband or stolen goods." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 436–37, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

It is well settled that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." (Internal quotation marks omitted.) *Texas* v. *Brown*, 460 U.S. 730, 738, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983). "A different situation is presented, however, when the property in open view is situated on private premises to which access is not otherwise available for the seizing officer. . . . [P]lain view provides grounds for seizure of an item when an officer's access to an object has some prior justification under the [f]ourth [a]mendment. Plain view is perhaps better understood,

therefore, not as an independent exception to the [w]arrant [c]lause, but simply as an extension of whatever the prior justification for an officer's access to an object may be." (Citation omitted; internal quotation marks omitted.) Id., 738–39.

"[T]he plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy. . . . [I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the [f]ourth [a]mendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, supra, 279 Conn. 520–21; see also *State* v. *Kuskowski*, 200 Conn. 82, 85, 510 A.2d 172 (1986) (where defendant's car was parked in public boat launch area, officer had right to stand beside car, peer in, and subsequently seize contraband in plain view). Additionally, the police need not have discovered the evidence inadvertently in order to seize contraband in plain view. See *State* v. *Eady*, supra, 249 Conn. 437 n.7 ("inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves" [internal quotation marks omitted]).

The defendant does not dispute that the officers were lawfully present in the residential parking lot when they first looked into the defendant's vehicle because they were responding to the emergency call reporting an assault on the premises. The defendant asserts, however, that once he was arrested and placed into the back of the police cruiser, the officers were no longer lawfully present because they were trespassing on private property and, therefore, they needed a warrant to look into his vehicle a second time.

We conclude that the officer's subsequent look into the defendant's vehicle was a mere continuation of their ongoing investigation. See *State* v. *Langley*, 128 Conn. App. 213, 225, 16 A.3d 799 ("[a] search warrant is not required where evidence discovered in plain view is seized as part of a continuing police investigation" [internal quotation marks omitted]), cert. denied, 302 Conn. 911, 27 A.3d 371 (2011); accord *State* v. *Magnano*, 204 Conn. 259, 269, 528 A.2d 760 (1987).

In the present case, when the officers arrived at the Harrison Apartments, they were actively investigating reports of a suspect who had committed an assault and was armed with a shotgun. Two witnesses indicated to the police that the defendant had a shotgun: The victim told police that they could find the defendant in his apartment with a shotgun, and the unidentified man indicated that the suspect was sitting with a shotgun

in his van in the parking lot. The officers did not see anyone with a shotgun in the van. Neary and Waddel remained with the van while the other officers apprehended the defendant as he was returning to his apartment. They did not find a weapon on his person, but they did find a 12 gauge shotgun shell in his pocket. Although the defendant had been arrested and placed in the back of the police cruiser, the police still had not located the shotgun described by the two witnesses. It was reasonable for the officers to believe, therefore, that the shotgun was located in the van and to return to the parking lot to retrieve the weapon. At the time the officers looked into the van for a second time, they were continuing their investigation into the assault; specifically, they were looking for the shotgun described by the two witnesses.

We find no meaningful distinction between the first and second time the police looked into the defendant's van. The second look into the defendant's van constituted no greater intrusion upon the defendant's privacy or possessory interest than did their initial view. See *State* v. *Eady*, supra, 249 Conn. 444–45 ("the initial lawful entry by a government agent, who was entitled to seize contraband observed in plain view . . . eliminated the defendant's reasonable expectation of privacy in the contraband and thereby permitted the subsequent entry by a second government agent to do that which the first could have done" [citations omitted]); see also *United States* v. *Jacobsen*, 466 U.S. 109, 117, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ("[o]nce frustration of the original expectation of privacy occurs, the [f]ourth [a]mendment does not prohibit governmental use of the now nonprivate information"). Because the plain view doctrine focuses on whether the *initial* intrusion was lawful, we reject the defendant's argument that the officers' intrusion somehow became unlawful during the ongoing investigation. We conclude, therefore, that the officers' second look into the defendant's vehicle was merely a continuation of their ongoing investigation into the assault, and therefore, the officers were lawfully present in the private parking lot.

The second element of the plain view doctrine requires that the incriminating character of the object viewed was immediately apparent. "The immediately apparent requirement of the plain view exception is satisfied if, at the time of discovery of the contraband or evidence, there is probable cause to associate the property in plain view with criminal activity without further investigation." (Internal quotation marks omitted.) *State* v. *Eady*, supra, 249 Conn. 439. "[Our Connecticut courts] consistently have held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily

must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 279 Conn. 521.

"Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . In other words, because [t]he probable cause determination is, simply, an analysis of probabilities . . . [p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 320 Conn. 70–71. "It is axiomatic that [t]he probable cause test then is an objective one. . . . The United States Supreme Court has endorsed an objective standard, noting that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend on the subjective state of mind of the officer." (Citation omitted; internal quotation marks omitted.) *State* v. *Eady*, supra, 249 Conn. 440–41, citing *Horton* v. *California*, 496 U.S. 128, 138, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test." *State* v. *Orellana*, 89 Conn. App. 71, 80, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). "Under the [*Illinois* v. *Gates*, 462 U.S. 213, 231–32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)] test, a court must examine all of the evidence relating to the issue of probable cause and, on the basis of that evidence, make a commonsense, practical determination of whether probable cause existed." *State* v. *Orellana*, supra, 80–81.

In light of this objective standard, we need only look to the evidence presented relating to the officers' knowledge to determine whether, on the basis of that knowledge, a reasonable person would have had probable cause to believe that the shotgun viewed by the officers from outside of the defendant's vehicle was the weapon described by the two witnesses. The trial court credited the testimony of the five officers and relied on that testimony in denying the defendant's motion to suppress. The court found that: (1) the police were dispatched to the YMCA and adjoining apartment complex to investigate a reported assault; (2) the dispatcher indicated that the suspect was in his apartment with a shotgun; (3) upon arrival, the police spoke with the victim, who identified the defendant as his assailant and told them that the defendant owned a shotgun; (4) an unidentified man told police that the defendant was in the residential parking lot sitting in his van with a shotgun; (5) the officers looked in the windows of the van but did not see the defendant or a shotgun inside;

(6) the officers apprehended the defendant and during the search of his person, the key to the vehicle in question was found in his pocket, along with a 12 gauge shotgun shell; (7) the officers again looked inside the van and could see the barrel of a shotgun and bullets protruding from a box on the floor of the van; and (8) the officers used the key to access the defendant's van; and (9) they seized the sawed-off shotgun from the backseat of the van. See, e.g., *State* v. *Wilson*, supra, 111 Conn. App. 624–25.

The state claims that those facts established probable cause to seize the defendant's shotgun once the police viewed it from outside the van. We agree. "[A] police officer is certainly entitled to utilize his training and experience in ascertaining probable cause"; (internal quotation marks omitted) id., 625; and in this case, we conclude that the totality of the facts are sufficient to "warrant a [person] of reasonable caution in the belief" that the weapon described by two witnesses might be found in the van. (Internal quotation marks omitted.) *State* v. *Badgett*, 200 Conn. 412, 430, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). It was reasonable for the officers to infer that there was a fair probability the defendant had stored the shotgun in his vehicle prior to his apprehension. We conclude, therefore, that the shotgun inside the defendant's van was immediately apparent to the officers.[5]

Accordingly, we conclude that the warrantless search of the defendant's vehicle and the seizure of the items found within were constitutionally valid pursuant to the plain view doctrine, and, thus, the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the defendant did not challenge in the trial court, or on appeal, the legality of his arrest or the fruits of the search of his person incident to that arrest.

[2] At the defendant's plea hearing, the state entered a nolle prosequi on the assault in the third degree charge.

[3] On January 20, 2017, Judge Holden issued a written memorandum of decision outlining his rationale for denying the motion to suppress, namely, that there was probable cause to believe that the vehicle contained contraband and that the shotgun was seized pursuant to the plain view of the officers.

[4] The defendant also raises a state constitutional claim that the plain view doctrine did not justify the warrantless search of his van under article first, § 7, of the Connecticut constitution. The defendant has not provided any independent analysis of the plain view doctrine under the Connecticut constitution, nor does he apply the facts of this case to pertinent Connecticut case law. "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *State* v. *Hodkoski*, 146 Conn. App. 701, 712 n.10, 78 A.3d 255 (2013). Accordingly, we decline to review

the defendant's state constitutional claim.

Additionally, because we determine that the officers' seizure of the shotgun was justified under the plain view doctrine, we do not reach the defendant's claim that, under article first, § 7, of the Connecticut constitution, a residential parking lot is part of the constitutionally protected curtilage of an individual's home.

[5] Even if we were to hold that the officers' search of the vehicle was unreasonable, which we do not, the shotgun inevitably would have been discovered through the inventory procedures of the police department. "Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. . . . To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation. . . . The inevitable discovery rule applies in a situation in which . . . the police would have legally discovered the evidence eventually." (Citations omitted; internal quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 640, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007).

In the present case, the van was towed from the parking lot and impounded for the misuse of license plates and because no information could be found on the VIN number. Ruge testified that it was the Bridgeport police department policy to conduct an inventory search of vehicles that had been towed. See id. ("[A]n inventory search is a well-defined exception to the warrant requirement. . . . In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. . . . A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." [Internal quotation marks omitted.]). The police would have found the shotgun when they inventoried the vehicle after they towed the van. Therefore, the inevitable discovery doctrine provides an alternative ground for affirmance.

————————————————