STATE OF CONNECTICUT *v.* MARK C. HODKOSKI
(AC 33930)

Beach, Sheldon and Dupont, Js.

Argued September 16—officially released November 19, 2013

*Matthew D. Dyer*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kevin J. Murphy*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Mark C. Hodkoski, appeals from the judgment of conviction rendered against him after a jury trial on charges of criminal attempt to commit evasion of responsibility in the operation of a motor vehicle in violation of General Statutes §§ 53a-49 and 14-224 (b), and operation of a motor vehicle while under the influence of intoxicating liquor as a third or subsequent offender in violation of General Statutes § 14-227a (g) (3).[1] On appeal, the defendant makes the following claims: (1) that the trial court erred in denying his motion to suppress certain postarrest

[1] The jury found the defendant not guilty on two other charges, possession of marijuana in violation of General Statutes § 21a-279 (c) and possession of drug paraphernalia in violation of General Statutes § 21-267 (a).

statements he made to the arresting police officer during custodial interrogation before he was advised of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); (2) that there was insufficient evidence to convict him of attempted evasion of responsibility because the state failed to prove that the motor vehicle accident from which he allegedly attempted to flee, without stopping and giving notice to the owner of property damaged in the accident, actually caused any damage to property, within the meaning of § 14-224 (b); and (3) that there was insufficient evidence to convict him of operation under the influence as a third or subsequent offender because the state failed to prove that, at the time of his alleged operation in this case, he had previously been convicted on at least two prior occasions of operation under the influence. We disagree with all three of the defendant's claims, and thus affirm the judgment of the trial court.

The following procedural history and facts, as the jury reasonably could have found them, are relevant to our resolution of the foregoing issues. Shortly after 7 p.m. on February 26, 2010, while operating his son's pickup truck on Main Street in Terryville, the defendant drove off the road and crashed into a tree on private property at 403 Main Street.[2] According to Terry Roth-Perreault, the owner of the property, the accident caused bark to be removed from the tree. After hearing the sound of a crash from inside her home, Roth-Perreault looked out her front window and saw a pickup truck against the tree, with the defendant, its driver and sole occupant, attempting to back up the truck and drive it away. Another neighbor, Daryl Telke, testified that his female companion called the police to report the accident.

---

[2] Terryville is a section of the town of Plymouth. The responding police officers were employed by the Plymouth Police Department.

Officer Paul Surprenant of the Plymouth Police Department was the first officer to respond to the scene. Upon his arrival, Surprenant observed a pickup truck, partially on, partially off the road at 403 Main Street, with the defendant trying to get out of the truck through the driver's side door. After parking his cruiser, Surprenant approached the defendant and asked him what had happened. The defendant responded that he had slid off the road on an accumulation of ice and snow. As the defendant was talking, Surprenant detected the odors of alcohol and marijuana on his person and noticed that his eyes were glassy. When Surprenant asked the defendant if he had been drinking alcohol that evening, the defendant stated that he had had "two beers."

Based on his observations of the defendant, and the defendant's admission that he had been drinking alcohol, Surprenant asked him to submit to a field sobriety test. The defendant initially responded to this request by telling Surprenant that he just wanted to leave and that Surprenant should let him go. Believing, however, that the defendant was intoxicated, Surprenant asked him once again to submit to a field sobriety test, and the defendant agreed. Surprenant began the field sobriety test with the horizontal gaze nystagmus test,[3] which he twice attempted to administer to the defendant after explaining it to him. The defendant failed the test both times by moving his head from side to side to follow the tip of Surprenant's pen instead of keeping his head still and following it only with his eyes, as the officer had directed. Surprenant then explained the one leg stand test to the defendant and demonstrated it for him. The defendant responded to these directions by telling Surprenant that he was not going to take any more tests

---

[3] Surprenant testified that the horizontal gaze nystagmus test is a test of the eyes in which the suspect is told to follow the movement of a stimulus, i.e., a pen or finger, with only his or her eyes while keeping his or her head straight.

because he "ha[d] to take a shit." The defendant then walked away from the officer to the other side of the truck, where he "squatted down a little bit toward the ground, made some grunting noises and stood up and said that he had shit himself." Surprenant thereupon placed the defendant under arrest for operation under the influence.

After the defendant was placed in handcuffs, Officer Richard Reney searched the cab of the pickup truck, where he had smelled the odor of burnt marijuana. During his search, Reney found a pipe and a small vial containing green plant like material that was later submitted for testing to the state toxicology laboratory, where it was found to be marijuana. Surprenant transported the defendant to the police station for booking, where he advised the defendant of his *Miranda* rights, of his right to refuse to provide a blood, breath or urine sample for chemical testing, and of the legal consequences of refusing to submit to chemical testing. The defendant refused to provide a breath sample for chemical testing and acknowledged his refusal in writing by signing a police department form A-44. After the booking process was completed, the defendant signed an appearance bond and was allowed to leave the police station with his son, who had been called to pick him up.

On May 10, 2011, the defendant filed, based on his rights under the fifth, sixth, and fourteenth amendments to the United States constitution and under article first, §§ 7, 8, and 9 of the Connecticut constitution, a motion to suppress both the evidence the police had seized from the pickup truck and the postarrest statements he had made to the arresting officer while in custody, including his refusal to submit to a Breathalyzer test. On June 10, 2011, the trial court, *Kahn, J.*, denied the motion from the bench following an evidentiary hearing at which Surprenant and the defendant testified. The court later articulated the basis for its ruling in a written

memorandum of decision dated October 20, 2011. With respect to the defendant's challenged statements, the court held that the defendant had been advised of his constitutional rights, as prescribed by *Miranda*, and that there was no indication "that his level of intoxication or any other factor kept him from understanding his rights and options." On that basis, it concluded that all the statements made by the defendant after his arrest, including his refusal to take a Breathalyzer test, had been made "after the defendant was properly advised [of] and knowingly, intelligently and voluntarily waived his right to remain silent."

Following a jury trial, where the defendant was found guilty of attempted evasion of responsibility and operation under the influence, further trial proceedings were held before the jury on the repeat offender allegations set forth in the part B information. In the part B trial, the state presented the testimony of one witness, Dawn Therriault, an administrative assistant at the Bristol Superior Court, who stated that the defendant was the same Mark Hodkoski who, on August 5, 2004, had pleaded guilty in her presence to operation under the influence as a second offender. The state also presented certified records of the defendant's Bristol conviction and of two earlier convictions for operation under the influence of a person with the same name as the defendant, the first of which was rendered in the New Britain Superior Court on September 1, 1989, and the second of which was rendered in the Enfield Superior Court on May 28, 1997. At the conclusion of the part B trial, the jury found the defendant guilty.

On the charge of operation under the influence as a third or subsequent offender, the court sentenced the defendant to a term of three years imprisonment, execution suspended after two years, with three years probation and a $2000 fine. On the charge of attempted

evasion of responsibility, the court sentenced the defendant to a consecutive term of one year imprisonment, execution suspended after six months, for a total effective sentence of four years imprisonment, execution suspended after two and one-half years, with three years probation and a $2000 fine. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim on appeal is that the trial court erred in denying that portion of his motion to suppress in which he challenged the admissibility of his postarrest statements to the arresting officer while he was being processed on the charge of operation under the influence as a third or subsequent offender. Among the statements he thereby sought to suppress was his refusal to submit a breath sample for chemical testing.

In support of his motion, the defendant claimed and testified that, before he answered the officer's questions about the circumstances of his operation of the pickup truck on the evening in question and refused the officer's request that he submit a breath sample for chemical testing, he was never advised of his *Miranda* rights or warned of the legal consequences of refusing to submit to chemical testing.[4] The state disputed this claim on the basis of testimony from Surprenant and official police documents in which Surprenant contemporaneously described the manner in which he had booked and processed the defendant for operation under the influence on the date in question.

Surprenant testified at the suppression hearing that, upon arriving at the police station with the defendant in custody, he picked up a packet of paperwork that the

---

[4] The defendant admitted that he was, however, read his rights during the booking process on the charge of possession of marijuana and possession of drug paraphernalia.

Plymouth Police Department uses whenever processing suspects charged with operation under the influence. The packet contained an "A-44 form, [a] notice of rights [form], [and an] appearance bond." Surprenant testified that he read the defendant his rights from the notice of rights form, and that the defendant then said that he understood those rights.[5] Thereafter, according to Surprenant, the defendant signed the notice of rights form, was given a copy of the signed form, and indicated a willingness to talk with him further. Surprenant was unable to produce the signed notice of rights form for use as evidence at the suppression hearing or at trial.[6]

Surprenant testified that he next read the defendant the implied consent advisory notice on the A-44 form, which informed the defendant of his rights with regard to submitting a blood, breath or urine sample for chemical testing.[7] According to Surprenant, he then asked the

[5] The notice of rights form contained the following language: "You are not obligated to say anything, in regard to this offense you are charged with but may remain silent. . . . Anything you may say or any statements you may make may be used against you. . . . You are entitled to the services of an attorney. . . . If you are unable to pay for the services of an attorney you will be referred to a Public Defender Office where you may request the appointment of an attorney to represent you. . . . You may consult with an attorney before being questioned, you may have an attorney present during questioning and you cannot be questioned without your consent."

[6] The defendant was read a notice of rights form for both the motor vehicle and other charges against him. The notice of rights form for the charge of operation under the influence was not entered into evidence because it could not be produced by either party. The notice of rights form for the charges of possession of marijuana and drug paraphernalia was entered into evidence at the suppression hearing as state's exhibit 1.

[7] The implied consent advisory notice contained the following language: "You are requested to submit to a blood, breath, or urine test chosen by the police officer. You may refuse a blood test, in which case another test will be selected. If you elect to submit to testing, you will be required to provide two samples. If you refuse to submit, the tests will not be given. Your refusal will result in the revocation of your operator's license for twenty-four (24) hours and the suspension of your operator's license for at least six (6) months. If you submit to the tests, and the results indicate that you have an elevated blood alcohol content, your operator's license will be revoked for twenty-four (24) hours and will be suspended for at least ninety

defendant if he wished to contact an attorney, to which the defendant responded, "right away: no." Surprenant recorded the defendant's response to that question and the time at which he made it on the A-44 form. Surprenant then completed the A-44 form, which contained questions pertaining to the offense of operation under the influence, with input from the defendant. Surprenant recorded on the A-44 form the time at which he initially read the defendant his *Miranda* warnings, noting it in military time as "20:13 HRS."[8] He then asked the defendant to submit to a Breathalyzer test, to which the defendant responded that he was "not taking any tests." Surprenant noted on the A-44 form, also in military time, that the defendant refused to submit a breath sample for chemical testing at "20:20 [HRS]." He then processed the defendant on his other charges of possession of marijuana and possession of drug paraphernalia.[9] On the latter charges, Surprenant advised the defendant once again of his *Miranda* rights, had him read and sign another notice of rights form, and gave him a copy of the signed form. On this second notice of rights form, Surprenant recorded the time at which the defendant was once again read his rights as "20:52 P.M." Both the A-44 form and the second, signed notice of rights form were introduced as evidence before the trial court.

In order to invoke his or her *Miranda* rights, a person must be in custody and subject to police interrogation. *State* v. *Canady*, 297 Conn. 322, 335, 998 A.2d 1135

(90) days. If you hold an operator's license from another state other than Connecticut, your driving privilege in Connecticut is subject to the same revocation and suspension penalties. The results of the tests or the fact of a refusal may be admissible in evidence against you in a criminal prosecution for driving under the influence of alcohol and/or drugs, or other offense, and evidence of a refusal may be used against you in any criminal prosecution."

[8] Surprenant testified that 20:13 hours is the equivalent of 8:13 p.m.

[9] The defendant was processed separately on the motor vehicle and other charges.

(2010). Here, the parties agree that the defendant was in custody and subject to interrogation when he responded to Surprenant's questions on the A-44 form and refused to take a Breathalyzer test. Thus, as the defendant himself concedes, the "only issue" presented by the defendant in the relevant portion of his motion to suppress was "whether Officer Surprenant properly advised the defendant of his *Miranda* rights."[10]

---

[10] In his appellate brief, the defendant suggests that the trial court erred in denying his motion to suppress because, in concluding that there was no "indication that his level of intoxication or any other factor kept him from understanding his rights and options," it "ignored" evidence of his intoxication, with which the record was "replete." The state responds to this suggestion by arguing that this court should not consider the effects of the defendant's intoxication on the validity of his waiver of rights, because the portion of his motion to suppress that challenged his postarrest custodial statements "was expressly and narrowly focused solely on whether there was sufficient evidence that he adequately was informed of those rights in the first place . . . ."

The issue of whether the defendant's intoxication affected the validity and sufficiency of the postarrest waiver of his rights, which was not included in the defendant's preliminary statement of issues, has not been adequately briefed for our review. The defendant wrote only one paragraph that even mentioned the issue. That paragraph appears in the section of his brief that addresses the distinct and different issue of whether the arresting officer read him his *Miranda* rights before subjecting him to custodial interrogation after his arrest. The defendant cited no case law concerning the effects of intoxication on the waiver of fundamental constitutional rights, either in the previously referenced paragraph or elsewhere, and failed even to identify the standard of review under which such an issue must be analyzed and decided. Under that standard of review, this court must make a scrupulous examination of the record to ascertain whether the trial court's finding of waiver of fundamental constitutional rights is supported by substantial evidence. See *State* v. *Chung*, 202 Conn. 39, 48–49, 519 A.2d 1175 (1987). Consistent with this omission, the defendant failed to draw the court's attention to any facts of record to which the standard of review might appropriately be applied, apart from a brief description of his own alleged conduct at the scene of his arrest. Furthermore, he presented no legal argument as to the significance of the described conduct in relation to his level of intoxication or the resulting validity and sufficiency of his waiver under controlling legal standards. In short, the defendant did nothing to present, support or argue any challenge to the validity and sufficiency of his waiver of rights on the basis of his intoxication other than briefly to mention it, then just as briefly and unilluminatingly, to criticize the court for failing to address it adequately in ruling on his motion to suppress. We conclude, for these reasons, that this issue is inadequately briefed.

At the end of the suppression hearing on June 10, 2011, the court orally denied the motion to suppress. As previously noted, the court later issued a written memorandum of decision explaining the basis for its ruling. On the threshold issue presented for its decision with respect to the defendant's postarrest statements, the court concluded that, notwithstanding the state's inability to produce the initial notice of rights form that Surprenant claimed the defendant had signed after his rights were first read to him, the defendant had in fact been read his *Miranda* rights before he made any of the challenged statements. The court based this finding both upon Surprenant's testimony, which it found to be credible, that he had read the defendant his rights before questioning him about his driving using the A-44 form, and upon the contemporaneous notation by the officer on that form that the defendant's *Miranda* rights had been read to him before he refused to submit a breath sample for chemical testing.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *State* v. *Crocker*, 83 Conn. App. 615, 660–61, 852 A.2d 762, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). Accordingly, we decline to review this issue because it has been inadequately briefed by the defendant.

the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997).

The trial court found that the defendant was read his *Miranda* rights twice—first, while he was being processed on his motor vehicle charges, before he refused to submit a breath sample for chemical testing, and later, while he was being processed on his other charges. Further, the trial court considered the defendant's extensive criminal record, including twenty-three previous arrests, at least three of which were for operation under the influence, as evidence of his familiarity with his rights and the booking process. The trial court concluded that "[t]he refusal and other statements contained in the A-44 form were made after the defendant was properly advised [of] and knowingly, intelligently and voluntarily waived his right to remain silent." The trial court's denial of the defendant's motion to suppress was not clearly erroneous in view of the previously described evidence, and thus, the defendant's motion to suppress his statements on the A-44 form and his refusal to take a Breathalyzer test was properly denied by the court.

## II

The defendant next claims that he is entitled to the reversal of his conviction and the entry of a judgment of acquittal on the charge of attempted evasion of responsibility. He claims, more particularly, that the state failed to prove, as an essential element of that offense, that the motor vehicle accident here at issue, from which he allegedly attempted to drive away without giving notice to the owner of the tree, had caused damage to the tree, thus triggering his duty to give notice of the accident to its owner under § 14-224 (b). In support of this claim, the defendant makes two basic arguments. First, he contends that the mere removal

of bark from a tree, without more, is analogous to the mere leaving of a paint transfer on stricken property, which assertedly was held, in *State* v. *Humphrey*, 22 Conn. Supp. 317, 321, 171 A.2d 201 (1961), not to constitute damage to property under § 14-224 (b). Second, he argues that even if his reliance on *Humphrey* is unavailing, the removal of tree bark in this case was not shown to have constituted damage to property within the meaning of § 14-224 (b) because no evidence was presented as to the financial consequences, if any, of the loss, as measured either by the cost of repairing or restoring the tree or by the diminution of its market value.

The state disputes both aspects of the defendant's claim. As for his contention that the removal of bark from a tree, like the leaving of a paint transfer, cannot constitute damage to property as a matter of law, the state counters: first, that the defendant's reading of *Humphrey* is mistaken, for that case did not hold that mere paint transfer cannot constitute damage to property as a matter of law; and second, that the removal of bark from a tree does in fact cause damage to the tree because it permanently alters the tree's physical structure. As for the defendant's fallback argument that the removal of tree bark in this case was not shown to have caused damage to property because it was not shown to have caused any particular financial loss to the owner of the tree, the state responds that § 14-224 (b) does not require such proof, but only proof of some damage to property, of no particular kind, amount, degree or proven value. For the following reasons, we agree with the state, and thus reject the defendant's claim.

In reviewing a claim of evidentiary insufficiency, our task is to determine whether the evidence presented at trial, if construed in the light most favorable to sustaining the challenged conviction, is sufficient to prove

each essential element of the charged offense beyond a reasonable doubt. If the evidence, so construed, is incapable of proving even one such essential element by that high standard, the defendant is entitled to the reversal of his conviction on that offense and the entry of a judgment of acquittal.

It is axiomatic that the state must prove its case in precise accordance with the allegations of the information, as sworn to and filed by the prosecuting attorney. Where, then, the prosecuting attorney charges the defendant with committing the offense under a particular statutory theory of liability, the state must prove each fact essential to conviction under that theory. Here, the prosecuting attorney charged the defendant in the second count of the substitute information, with attempted evasion of responsibility as follows: "The State's Attorney for the Judicial District of New Britain through the undersigned Supervisory Assistant State's Attorney accuses Mark Hodkoski of the crime of attempted evading responsibility in violation of . . . §§ 53a-49 (a) (2) [and] 14-224 (b) and alleges that on or about February 26, 2010, at approximately 7:00 p.m. at or near Main Street, Plymouth, Connecticut, the defendant Mark Hodkoski, acting with the kind of mental state required for the commission of the crime of evading responsibility, did intentionally do and omit to do anything which, under the circumstances as he believed them to be, were acts of omissions constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of evading responsibility."

Insofar as it applies to this case, § 14-224 (b) provides in relevant part as follows: "Each person operating a motor vehicle who is knowingly involved in an accident which causes . . . injury or damage to property shall at once stop and . . . give his name, address and operator's license number and registration number . . . to

the owner of the injured or damaged property, or to any officer or witness to the . . . injury or damage to property . . . ." Violation of these statutory requirements constitutes the offense of evasion of responsibility.

In light of the foregoing requirements, the offense of attempted evasion of responsibility requires, inter alia, proof beyond a reasonable doubt that, when acting with the mental state required for the commission of evasion of responsibility, the defendant intentionally took a substantial step in a course of conduct planned to culminate in the commission of that offense, to wit: leaving the scene of a motor vehicle accident that has caused damage to property without stopping to give notice to the owner of the injured or damaged property or to any officer or witness to the damage. One essential element of that offense, as charged in this case, was that the motor vehicle accident in which the defendant was involved actually caused damage to property, within the meaning of § 14-224 (b).

As this case was tried, the state's only claim of damage to property resulting from the accident was that bark was removed from the stricken tree. The defendant does not contest that bark was removed from a tree as a result of the accident, or that the tree in question was not the property of another. Instead, he claims that the proven removal of bark from the tree, which concededly belonged to the owner of the property on which it stood, did not establish damage to property as a matter of law.

With respect to the defendant's initial challenge to the sufficiency of the state's evidence of damage to property, the court must first examine *State* v. *Humphrey,* supra, 22 Conn. Supp. 317, the case on which the defendant relies for the proposition that the mere leaving of a paint transfer on property struck by a motor vehicle does not constitute damage to property as a

matter of law. In *Humphrey*, the Appellate Division of the Circuit Court reviewed a case in which the only damage allegedly caused to the complainant's vehicle by an accident with the defendant's vehicle was a streak of paint. Id., 321. There, however, the focus of the court's analysis as to the sufficiency of the evidence to prove that the accident had caused damage to property was not whether a streak of paint could ever constitute damage to property as a matter of law, but whether the particular streak of paint allegedly left by the accident on the complainant's vehicle had in fact been caused by the defendant's vehicle. Id. Concluding that there was insufficient evidence before the court to prove that the paint streak in question had actually been left there by the defendant's vehicle, the court reversed the defendant's conviction on the ground of insufficient evidence. Id. For that reason, the defendant's reliance on *Humphrey* is completely misplaced.

As for the defendant's alternative argument that the removal of bark from a tree cannot be found to constitute damage to property without proof of resulting financial loss, the state correctly notes that § 14-224 (b) imposes no such requirement. The statute does not define the term "damage to property," and contains no qualifying language conditioning the duty to stop and give notice to the owner of damaged property upon the occurrence of damage of any particular nature, extent, degree or value. Consistent with this omission, the Appellate Division of the Circuit Court has held on two occasions that the amount of damage is immaterial to the duties arising under the evasion of responsibility statute. See *State* v. *Herbst*, 2 Conn. Cir. Ct. 236, 238, 197 A.2d 550 (1963); *State* v. *Gereg*, 6 Conn. Cir. Ct. 6, 8, 261 A.2d 867 (1969) ("[w]hether the damage is slight or great is immaterial, so long as there has been damage" [internal quotation marks omitted]). Surely, it would be poor public policy to afford drivers of vehicles

involved in accidents the all too convenient option of leaving the scenes of such accidents based upon their self-serving, personal assessments that no measurable degree of property damage has resulted therefrom. Not surprisingly, our legislature has never taken steps to amend the statute to change this damage standard in the fifty years since it was first clarified in *Herbst*.

Against this background, we conclude that the state's evidence of removal of bark from the tree struck by the defendant's vehicle in the accident here at issue was sufficient to prove damage to property, as required for conviction under § 14-224 (b). The removal of such bark from a living tree by the impact of the defendant's vehicle upon it was well described and documented in the evidence. Such removal of bark permanently altered the structure of the tree—a living thing that draws its essential nutrients through its bark to survive. Because the occurrence of such damage is uncontested, and such damage constituted damage to property within the meaning of the statute, the defendant was required to stop and give notice of the accident to the owner of the damaged property. Evidence of his proven effort to drive away without doing so was sufficient to support his conviction for attempted evasion of responsibility.

### III

Lastly, the defendant claims that there was insufficient evidence to convict him as a third or subsequent offender of operation under the influence. He argues that "[s]imply comparing names from prior convictions to the defendant is insufficient to prove beyond a reasonable doubt the identity of the defendant is the same as the individual in the records." The state does not disagree that mere name comparison alone is typically insufficient to prove beyond a reasonable doubt that the criminal record of a person with the same name as the defendant is the defendant's criminal record. Here,

however, the state argues that much more evidence was presented to the jury than the bare criminal records of one or more persons who might share the defendant's name to establish that the defendant had at least two prior convictions for operation under the influence before the date of his operation under the influence in this case. It relies, for this purpose, both upon the long list of other common features shared by the defendant and the person or persons listed and described in the proffered criminal records, as well as on the testimony of Therriault, who personally identified the defendant as the person who, on August 5, 2004, pleaded guilty in her presence to operation under the influence as a second offender, while she was working in the Bristol Superior Court. We agree with the state that the foregoing evidence afforded the jury a sufficient basis for finding the defendant guilty of operation under the influence as a third or subsequent offender, and thus, we reject the defendant's claim to the contrary.

Turning first to the testimony of Therriault,[11] who personally identified the defendant as the same Mark Hodkoski who had pleaded guilty to operation under the influence as a second offender in Bristol on August 5, 2004, such testimony alone was legally sufficient to prove that the defendant's challenged conviction was his third or subsequent conviction for operation under the influence. Viewed in the light most favorable to the state, Therriault's testimony about the defendant's plea to and later sentencing for operation under the influence as a second offender established both the defendant's prior conviction for operation under the influence in Bristol and, by the defendant's own admission during the underlying plea proceeding, that by the

---

[11] Therriault was the courtroom clerk whose signature appears on multiple documents relating to the defendant's August 5, 2004 conviction and resulting order of probation.

time of the Bristol offense he had already been convicted on at least one prior occasion of operation under the influence. In light of such evidence, the defendant's present conviction for operation under the influence was at least his third conviction for that offense, as required for conviction of operation under the influence as a third or subsequent offender.

Moreover, even if Therriault had not testified, the certified records admitted into evidence of the defendant's 2004 conviction in Bristol and of the 1989 and 1997 convictions for operation under the influence of a person with the defendant's name, in New Britain and Enfield, respectively, contained sufficient identifying information about the person to whom those records pertained to identify the defendant as that person. The record of the 1997 Enfield conviction, like that of the defendant's 2004 Bristol conviction, listed not only the defendant's name, but his date of birth, operator's license number, address, and social security number, all of which were identical to those of the defendant in this case.[12] The record of the 1989 New Britain conviction includes all of the same information about the person to whom it pertains except the social security number.

The defendant argues that because the 1989 New Britain conviction does not include the defendant's social security number, the state cannot prove beyond a reasonable doubt that he is the person to whom that

---

[12] Although the defendant did not testify at trial, he did testify at the suppression hearing that he has lived at "91 Scott Road, Terryville, Connecticut" for "fifty-nine years." This is the same address noted on the court records from the previous convictions for operation under the influence in the Bristol, Enfield, and New Britain cases, which date only as far back as twenty-two years before the date of this trial. The information contained in the records of conviction is also consistent with the address and date of birth listed on the booking information sheet, the A-44 form, the defendant's driver's license, and the fingerprint information, which were all full exhibits made available to the jury during its deliberations.

record pertains.[13] He asserts that without some independent identification of him, there is insufficient evidence to convict him as a third offender. We are not persuaded by these arguments for three reasons. First, as previously noted, the testimony from Therriault was independently sufficient to establish that, by the time of his operation in this case, the defendant had been convicted on at least two prior occasions of operation under the influence. Second, because the state's evidence actually tended to establish that he had three prior convictions for operation under the influence, only two of which were necessary to convict him as a third or subsequent offender, any deficiency in the state's proof as to any one of those prior convictions would not undermine the sufficiency of its remaining evidence on that issue. Third and finally, even the challenged record of the 1989 New Britain conviction of a person with the defendant's name was sufficient to support the inference that he is the person to whom the record pertains, for even in the absence of a listed social security number, it supplied sufficient personal information about its subject to enable the jury to find that it pertained to the defendant.

Consistent with the latter conclusion, this court has previously held that information such as name, address, date of birth, physical description, and operator's license number are all indicators that identify a defendant. See *State* v. *Windley*, 95 Conn. App. 62, 67, 895 A.2d 270 (concluding that "the court reasonably could have found beyond a reasonable doubt that the defendant was a third time offender" even though "not all of the court documents pertaining to those convictions

___

[13] It bears noting that the 1989 New Britain record spells the defendant's last name as "Hodkowski" instead of "Hodkoski," which could be one reason why his social security number was not generated on the police department's computer record. Despite this typographical error, the record still lists the defendant's birthdate as "05/15/1952" and address as "Scott Rd, Terryville, CT 06786," which is consistent with the other court records of his prior convictions of operation under the influence.

bore his social security number" because there were "numerous indicators that the defendant was the same person who had been [previously] convicted"), cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006).

Construing the evidence in the light most favorable to sustaining the conviction, we conclude that the jury reasonably could have found that the defendant was guilty beyond a reasonable doubt of operation under the influence as a third or subsequent offender.

The judgment is affirmed.

In this opinion the other judges concurred.