******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.* ISRAEL COLON
(AC 47038)

Elgo, Moll and Suarez, Js.

*Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crimes of illegal possession of a weapon in a motor vehicle and possession of narcotics with intent to sell, the defendant appealed. He claimed that the trial court improperly denied his motion to suppress evidence seized without a warrant during a motor vehicle stop. *Held*:

The trial court properly denied the defendant's motion to suppress, as the court properly determined that the police officers had a reasonable and articulable suspicion sufficient to initiate the motor vehicle stop and probable cause to search the vehicle, thus, the warrantless search of the vehicle and the seizure of items found therein was not a violation of the defendant's rights pursuant to the federal and state constitutions.

Argued May 27—officially released August 5, 2025

*Procedural History*

Information charging the defendant with three counts of the crime of violation of a protective order, one count each of the crimes of criminal possession of a pistol, illegal possession of a weapon in a motor vehicle, possession of narcotics, possession of narcotics with intent to sell, and possession of a large capacity magazine, and with the infractions of improper parking and operating an unregistered motor vehicle, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the court, *Hon. Frank M. D'Addabbo, Jr.*, judge trial referee, denied the defendant's motion to suppress certain evidence; thereafter, the state filed a substitute information charging the defendant with the crimes of illegal possession of a weapon in a motor vehicle and possession of narcotics with intent to sell; subsequently, the defendant was presented to the court, *Chaplin, J.*, on a conditional plea of nolo contendere to the charges of illegal possession of a weapon in a motor vehicle and possession of narcotics with intent to sell; judgment

of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*Emily C. Kaas-Mansfield,* assigned counsel, with whom was *Kara Moreau,* assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza,* senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott,* state's attorney, and *Edward Azzaro,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Israel Colon, appeals from the judgment of conviction rendered by the trial court following his conditional plea of nolo contendere to illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (a)[1] and possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) (1) (A).[2] The defendant

[1] General Statutes § 29-38 (a) provides: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be guilty of a class D felony, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or more in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument."

[2] General Statutes § 21a-277 (a) provides in relevant part: "(1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance . . . ."

The defendant also pleaded guilty to harassment in the second degree, pursuant to the *Alford* doctrine, stemming from events unrelated to the present appeal. See *North Carolina* v. *Alford,* 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

entered that plea after the court denied his motion to suppress evidence seized during a motor vehicle stop. The sole issue on appeal is whether the court properly denied the motion to suppress. We affirm the judgment of the trial court.

On September 15, 2023, the state recited the following facts prior to the court's acceptance of the defendant's plea of nolo contendere. On January 3, 2023, in the evening hours, members of the Hartford Police Department's street crimes unit were on patrol in the city of Hartford on Bond Street. The officers observed an Infiniti motor vehicle that had been improperly parked. The officers approached the vehicle and observed the operator, later identified as the defendant, frantic in the driver's seat. They also observed in plain view a scale that they believed to be an indication of drug paraphernalia. The defendant was asked to exit the vehicle. A search of that vehicle revealed a Glock nine millimeter semiautomatic pistol, as well as 115 wax paper sleeves containing a controlled substance that later tested positive for the presence of fentanyl. A search incidental to the defendant's arrest revealed approximately three grams of crack cocaine on his person. When the officers secured the drug evidence—in particular, the 115 wax paper sleeves—they believed, on the basis of their training and experience, that the manner of their packaging was indicative of street level narcotics dealing.

As a result of the search of his person and his vehicle, the defendant was arrested and charged with multiple offenses. On May 31, 2023, the defendant filed a motion to suppress all tangible evidence that had been seized, arguing that such evidence constituted the fruit of an illegal warrantless search. The defendant argued that, under the fourth and fourteenth amendments to the United States constitution, as well as article first, §§ 7, 8, and 9, of the Connecticut constitution, he was entitled

to the exclusion of any evidence seized during the course of the traffic stop.

The court held a hearing on the motion to suppress on July 11, 2023. At the hearing, the state presented the testimony of Officers Justin Damone and David Anderson of the Hartford Police Department. The state also submitted into evidence a still photograph taken from the officers' body camera recordings (exhibit 1), body camera recordings from both officers, a police report pertaining to the incident written by Officer Damone, and the scale that was seized from the vehicle.

After the evidentiary hearing on the motion to suppress, both parties filed memoranda of law. In his memorandum of law in support of the motion to suppress, the defendant argued in relevant part that the officers did not have a reasonable or articulable suspicion that he was engaged in illegal conduct because any reasonable officer, "upon sight of a vehicle stopped along the curb with its hazard lights flashing, would not have any basis to believe it was improperly parked . . . . General Statutes § 14-251 . . . allows disabled vehicles to remain stopped on the road." In support of this contention, the defendant pointed to the officers' failure to inquire as to whether the defendant's vehicle was disabled and further argued that the "video does not clearly show the distance of the vehicle from the curb."

The court heard oral argument from the parties on August 2, 2023. Defense counsel argued, inter alia, that the body camera footage contradicted Officer Damone's testimony that he had seen a scale, in plain view, on the center console of the defendant's vehicle and that the heavily tinted windows prevented the officers from seeing inside the interior of the vehicle at all.[3] Defense counsel further argued that "any sort of probable cause

---

[3] More specifically, defense counsel contended that the object seen on the body camera recording was not the scale that was admitted into evidence.

to search the vehicle . . . would have been based on the scale and the contraband allegedly seen on the scale that is not present in the video. Any sort of contraband found on [the defendant] was found after the search of the vehicle, so that cannot be a basis for probable cause to search the vehicle."[4] The prosecutor disagreed, arguing that the officers had a reasonable and articulable suspicion that the vehicle was illegally parked and that this gave them authority to initiate the traffic stop and approach the vehicle. The prosecutor further argued that the body camera footage should be considered as a "supplement" to the testimony of the officers, and that the court had discretion to weigh the officers' testimony, as well as the recording, in determining whether probable cause had developed to search the vehicle. The prosecutor then argued that the plain view exception to the warrant requirement applied in the current scenario because Officer Damone saw the scale covered in white residue sitting on the center console and relied on his training and experience in determining that it was evidence of criminal activity.[5]

---

[4] In its memorandum of decision on the motion to suppress, the court noted, with respect to the argument that the object visible on the center console of the defendant's vehicle did not resemble the scale that was recovered and admitted into evidence at the suppression hearing, that "the defendant places great emphasis on what he perceives to be a discrepancy between the scale that was reported in Officer Damone's police report, to wit, a black scale, versus that which is seen on the body camera recording, to wit, a gray scale. Although the court disagrees with the defendant's characterization of the scale's color, to the extent that the scale does not appear properly black on the recording, the court credits Officer Damone's testimony on the matter, namely, that lighting is responsible for any such discrepancy."

[5] The prosecutor also argued that the search could be justified as a search incident to a lawful arrest. Under well established precedent from the United States Supreme Court, a police officer who has effectuated a lawful custodial arrest of the occupant of an automobile may, incident to that arrest, search the passenger compartment of that automobile for evidence pertaining to the criminal activity that forms the basis of the lawful arrest. See *New York* v. *Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); see also *Arizona* v. *Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (searches conducted "incident to a recent occupant's arrest are

The court denied the defendant's motion to suppress on September 5, 2023. In its factual findings, the court noted that Officers Damone and Anderson were on patrol on the night of January 3, 2023, and were tasked with "enforcing quality of life issues throughout the city," which included policing parking violations. The court found that the officers observed the defendant's vehicle running and emergency lights activated, parked "along the south curb in front of 55 Bond Street. As the vehicle appeared to be more than twelve inches from the curb, officers suspected that this operator may be parking it in violation of . . . § 14-251."

"After activating the patrol vehicle's emergency lights and sirens, Officer Damone parked and proceeded on foot towards the vehicle's passenger side door activating his body camera. He saw through the vehicle's lightly tinted front window that the operator—a Hispanic male later identified as the defendant—was making various furtive movements and gestures including movements towards the rear of his pants.

"Officer Damone shined his flashlight in the direction of the vehicle's interior and knocked on the passenger window, informing the defendant that he could see him moving around inside. After observing the defendant reach towards his buttocks, Officer Damone informed Officer Anderson that he thought the defendant may be attempting to stuff something inside his rear cavity. Furthermore, Officer Damone testified that he could see a black scale, coated with a white powderlike substance, on the center console." (Footnote omitted.)

"Officer Damone subsequently requested that Officer Anderson, then standing adjacent to the driver side

authorized only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"). Because we conclude that the court properly denied the motion to suppress on the ground that probable cause was established on the basis of the plain view exception to the warrant requirement, we do not address this alternative ground for affirmance of the judgment.

window, have the defendant step outside the vehicle. The defendant voluntarily complied and was not initially placed in handcuffs. Thereafter, Officer Damone opened the passenger door and observed from outside the vehicle the scale sitting in plain view on the center console, coated with what appeared to be a white substance. Additionally, a large clear plastic bag with wax paper sleeves protruding out of it could be observed inside the steering wheel console. Based on Officer Damone's training and experience, wax paper sleeves are commonly used to package illegal narcotics. Officer Damone subsequently closed the passenger door, and the defendant was placed in handcuffs by Officer Anderson. Officer Damone then walked to the driver's door, where he crouched down and reached towards the plastic bag. As he attempted to dislodge the plastic bag, a firearm slid out from inside the console. After seizing the firearm and suspected narcotics, Office Damone asked the defendant whether he had secreted narcotics in his rear cavity. Rock cocaine was ultimately discovered therein. The body worn camera recorded the interaction.''

The court concluded that, in initiating the traffic stop, the officers had a reasonable and articulable suspicion that the defendant had violated § 14-251 (a).[6] The court rejected the defendant's argument that any reasonable officer would not have believed that his vehicle was

---

[6] General Statutes § 14-251 (a) provides: "No vehicle shall be permitted to remain stationary within ten feet of any fire hydrant, or upon the traveled portion of any highway except upon the right-hand side of such highway in the direction in which such vehicle is headed; and, if such highway is curbed, such vehicle shall be so placed that its right-hand wheels, when stationary, shall, when safety will permit, be within a distance of twelve inches from the curb, except if a bikeway, as defined in section 13a-153f, or such bikeway's buffer area, as described in the federal Manual on Uniform Traffic Control Devices, is in place between the parking lane and the curb, such vehicle shall be so placed that its right-hand wheels, when stationary, shall, when safety will permit, be within a distance of twelve inches from the edge of such bikeway or buffer area."

illegally parked. The court also rejected the defendant's argument that the body camera footage did not clearly reveal the true distance of his vehicle from the curb. The court based this finding on the credible testimony of the officers, as well as its own review of exhibit 1 and the body camera footage, concluding that an objectively reasonable officer could have formed a reasonable suspicion that the defendant was parked in violation of § 14-251.[7] The court also concluded that the officers had probable cause to effectuate a search of the defendant's vehicle because of the defendant's "furtive behavior" coupled with Officer Damone's observations of contraband in plain view.[8] In light of those determinations, the court denied the defendant's motion to suppress.

The state subsequently charged the defendant by way of a long form information with illegal possession of a weapon in a motor vehicle in violation of § 29-38 (a) and possession with intent to sell in violation of § 21a-277 (a) (1) (A). The defendant thereafter entered a conditional plea of nolo contendere,[9] which the court

---

[7] More specifically, the court noted that the defendant's vehicle appeared "to be parked at a noticeably far distance from the curb." At the hearing on the motion to suppress, Officer Damone testified that he saw "a vehicle that was . . . sticking way out into the road. Well, more than twelve inches from the curb. The vehicle was running. So, we conducted a stop of the vehicle to speak with the operator to inform him that he was parked too far from the curb." We note that the state argued, and the court determined, that reasonable and articulable suspicion existed for the traffic violation. Notwithstanding this determination, we note that these facts, as found by the court, establish probable cause to issue a citation for the violation of § 14-251 (a).

[8] The court also determined that, even if probable cause to search the vehicle did not exist, the gun and drugs would have inevitably been discovered in a protective sweep. The defendant contends that this was an improper determination, and the state argues that this is an alternative ground by which we might affirm the court's denial of the motion to suppress. Because we conclude that probable cause for the search did exist, we need not reach this issue.

[9] General Statutes § 54-94a "permits a defendant to enter a conditional plea of nolo contendere while preserving the right to appeal in certain

accepted, and he was sentenced to a total effective sentence of eight years of incarceration, execution suspended after eight months to serve, and three years of probation.

On appeal, the defendant argues that the court improperly denied his motion to suppress the evidence seized in the traffic stop. The defendant argues that the court erred in (1) finding reasonable and articulable suspicion for the traffic stop and (2) concluding that probable cause existed to justify the warrantless search of the vehicle. The state responds that, pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a reasonable and articulable suspicion justified the initial motor vehicle stop by the officers. Once that stop was justified, according to the state, the presence of drug paraphernalia in plain view, in combination with the defendant's furtive movements, established probable cause to search the vehicle, as provided for by the automobile exception to the warrant requirement under the fourth amendment. We agree with the state.

We first set forth the appropriate standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct

specified circumstances, namely, the denial of a motion to dismiss or a motion to suppress that is dispositive of the case." (Footnote omitted.) *State* v. *Russo*, 221 Conn. App. 729, 752–53, 303 A.3d 279 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024). "A nolo contendere plea has the same effect as a guilty plea, but a nolo contendere plea cannot be used against the defendant as an admission in a subsequent criminal or civil case." (Internal quotation marks omitted.) *State* v. *Dayton*, 176 Conn. App. 858, 869 n.12, 171 A.3d 482 (2017). At the plea hearing, the parties stipulated that the granting of the defendant's motion to suppress would have been dispositive of the charges to which the defendant entered the plea of nolo contendere.

and whether they find support in the facts set out in the memorandum of decision . . . . Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 182 Conn. App. 580, 586–87, 190 A.3d 974, cert. denied, 330 Conn. 920, 194 A.3d 290 (2018).

We next set forth the applicable constitutional principles. "The federal law of search and seizure in this area is well settled. The fourth amendment to the federal constitution, made applicable to the states through the due process clause of the fourteenth amendment, provides in relevant part that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . Certain seizures are reasonable under the fourth amendment even in the absence of probable cause if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. . . . When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his suspicions." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 495, 692 A.2d 1233 (1997). "Reasonable and articulable suspicion is an objective standard that focuses not on the

actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) Id., 496.

Further, under both the United States and Connecticut constitutions, "[o]rdinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. . . . Under both the federal and the state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 111 Conn. App. 614, 622, 960 A.2d 1056 (2008), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009). One such exception to the warrant requirement is the automobile exception.[10]

"The United States Supreme Court first recognized the automobile exception to the fourth amendment warrant requirement in *Carroll* v. *United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925), where the court explained that if [a] search and seizure without

---

[10] "There are four recognized situations where a warrantless search of a car may lead to the conclusion that such a search was reasonable under the United States or [Connecticut constitution] . . . (1) it was made incident to a lawful arrest; (2) it was conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) it was based upon consent; or (4) it was conducted pursuant to an inventory of the car's contents incident to impounding the car." (Internal quotation marks omitted.) *State* v. *Wilson*, supra, 111 Conn. App. 622–23.

a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. Likewise, under our state constitution, our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so . . . as where the searching officer[s] have probable cause to believe that the vehicle contains contraband. . . . The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made." (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 292–93, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017).

The plain view doctrine is "based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 347, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). Further, "not only must the item be in plain view; its incriminating character must also be 'immediately apparent.'" *Horton* v. *California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). In sum, when officers are in a place that they are entitled to be and they observe items— in plain view—that are immediately perceptible as incriminating, probable cause can be established from those observations. Moreover, "[f]urtive movements may be considered as a factor in determining whether officers have the requisite probable cause to conduct a search or arrest." *State* v. *Thomas*, 98 Conn. App. 542, 553, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910,

916 A.2d 53 (2007). The combination of furtive movements and the observation of contraband within plain view of an officer is sufficient to establish probable cause to search an automobile. See id., 552.

"It is well settled that [i]f the police obtain physical evidence or statements as the result of the seizure of a person without probable cause, in violation of the constitution of Connecticut, article first, §§ 7 and 9, [or the fourth amendment to the United States constitution] the fruit of the poisonous tree doctrine requires that the evidence be suppressed as the product of the unlawful seizure." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 404, 678 A.2d 1338 (1996); see also *Weeks* v. *United States*, 232 U.S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652 (1914) (establishing exclusionary rule for evidence seized in violation of fourth amendment rights).

With the foregoing legal principles in mind, we consider the detailed findings of fact made by the court, following the evidentiary hearing on the motion to suppress. First, the court, having viewed the body camera recording of the traffic stop, found that the defendant's vehicle was "parked at a noticeably far distance from the curb."[11] The court concluded that the officers reasonably believed that the defendant's vehicle was parked in violation of § 14-251. That reasonable belief, in turn, gave the officers the right, pursuant to *Terry*, to stop the vehicle and approach the defendant, who was in the driver's seat of the vehicle. See *Terry* v. *Ohio*, supra, 392 U.S. 21–22. At that point in time, the officers were authorized to determine whether the vehicle was disabled and to alert the driver that the vehicle was illegally parked.[12]

---

[11] As the court aptly noted, "the issue is not whether the defendant actually parked his vehicle more than twelve inches from the curb . . . but whether [the officers] *reasonably* suspected that he had committed the foregoing offense." (Emphasis in original.)

[12] The defendant points out that both officers acknowledged that § 14-251 does not apply to disabled vehicles and that the hazard lights were activated

In concluding that there was probable cause that the defendant was involved in illegal activity, the court specifically credited the officers' testimony. The court found that, as the officers approached the vehicle, Officer Damone, using his flashlight, saw the defendant engaged in "various furtive movements and gestures including movements towards the rear of his pants." The court also found that Officer Damone saw the scale, in plain view, covered in white residue on the center console of the vehicle, next to the defendant. The court also credited Officer Damone's testimony that he saw a "large clear plastic bag with wax paper sleeves protruding out of it [that was] inside the steering wheel

on the defendant's vehicle when the officers initiated the traffic stop. Therefore, according to the defendant, if the vehicle were disabled, there would have been no basis for the reasonable and articulable suspicion that the vehicle was parked illegally. We are not persuaded that the mere use of hazard lights by a vehicle that appears to be illegally parked requires the assumption that the vehicle is disabled nor does it obviate the existence of a reasonable and articulable suspicion of illegal activity. Moreover, putting aside the defendant's failure to point to evidence that suggests that the vehicle was in fact disabled, the court reasoned that the officers would have seen the contraband in plain view when approaching the vehicle, regardless of whether or not it was actually disabled. Although the defendant argues that there are credibility issues with the officers and evidence to suggest that the traffic stop "was a mere pretext," the defendant nonetheless concedes that "[r]easonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Manousos*, 179 Conn. App. 310, 322, 178 A.3d 1087, cert. denied, 328 Conn. 919, 181 A.3d 93 (2018). This court's precedent is in accord with that of the United States Supreme Court, which has held that the subjective motivation behind a police officer's actions—for example, whether there are fabricated or pretextual reasons that are not reflective of the officer's true motivations for initiating a traffic stop—are irrelevant. See, e.g., *Whren* v. *United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (constitutionality of traffic stops does not depend on actual motivations of individual officers involved). Put differently, the court correctly determined that, in viewing the vehicle parked more than twelve inches from the curb, the officers had at least a reasonable and articulable suspicion that justified the traffic stop, regardless of whether the vehicle was disabled. See footnote 7 of this opinion.

console." The court then properly determined that the officers ordered the defendant removed from the vehicle, for their own safety and because they now had probable cause to search the defendant and the passenger compartment of his vehicle for evidence pertaining to the distribution of illegal narcotics. A "police officer is certainly entitled to utilize his training and experience in ascertaining probable cause . . . ." (Internal quotation marks omitted.) *State* v. *Wilson*, supra, 111 Conn. App. 625.

We agree with the court's conclusion that the ensuing search of the passenger compartment of the vehicle was constitutional, as it was conducted in accordance with the automobile exception to the warrant requirement. This search resulted in the discovery of the evidence that formed the basis for the charges against the defendant and to which he pleaded nolo contendere.

On appeal, the defendant acknowledges that the court's decision "relies in large part on its crediting of the officers' testimony" but argues, nonetheless, that the purportedly "clear contradictions" between that testimony and the police report, as well as the footage from the body cameras, undermines Officer Damone's account of what transpired such that his testimony "should not have been given weight or credit, particularly as it related to what he allegedly saw and when/where he allegedly saw it." The defendant, in effect, asks us to second-guess the trial court's credibility determinations. As we have often had occasion to iterate, "[c]redibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and

to draw necessary inferences therefrom . . . . As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because the demeanor, conduct and other factors are not fully reflected in the cold, printed record . . . . We, therefore, defer to the [trier of fact's] credibility assessments . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 183 Conn. App. 54, 61, 191 A.3d 1102, cert. denied, 330 Conn. 914, 193 A.3d 50 (2018). We will not depart from that deference to the trial court in the present case.

The court properly determined that the officers had a reasonable and articulable suspicion sufficient to initiate the traffic stop. Upon approaching the vehicle, the officers saw the defendant's furtive movements as well as immediately apparent evidence of criminal activity such that they established probable cause to search the vehicle. We therefore conclude that the warrantless search of the defendant's vehicle and the seizure of the items found within the vehicle were constitutionally valid. The court, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.